UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CARMEN FLEMING,

    Plaintiff,

v.                                      Case No. 1:05-CV-338

UNUM LIFE INSURANCE COMPANY      HON. GORDON J. QUIST
OF AMERICA, misnamed as FIRST UNUM
LIFE INSURANCE COMPANY
OF AMERICA,

    Defendant.
_____/

**OPINION**

Plaintiff, Carmen Fleming ("Fleming"), sued Defendant, UNUM Life Insurance Company of America ("UNUM"), in the Ingham County Circuit court alleging that UNUM wrongfully refused to pay her benefits under a long term disability insurance policy. UNUM removed the case to this Court on May 12, 2005, on the basis of federal question jurisdiction under 28 U.S.C. § 1331. In particular, UNUM alleged that Fleming's claim for benefits is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 to 1461. Pursuant to the Court's ERISA Case Management Order entered on May 18, 2005, UNUM and Fleming have filed cross motions for judgment based upon the administrative record. As set forth below, the Court will grant UNUM's motion and deny Fleming's motion for the reason that UNUM's decision to deny benefits was not arbitrary and capricious.

**Facts**

During 1998, Fleming was employed by Old Kent Financial Corporation ("Old Kent") as a personal banker. As an Old Kent employee, Fleming was covered by Old Kent's disability plan, which provided both short term disability benefits and long term disability benefits. Old Kent

apparently self-funded short term disability benefits and provided long term disability benefits under UNUM Group Insurance Policy No. 509670 001 (the "Policy"). UNUM administered benefits under Old Kent's short term disability plan and long term disability benefits under the Policy.

The Policy contains a two-tiered definition of disability as follows:

You are disabled when UNUM determines that:

-you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
-you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.

After 24 months of payments, you are disabled when UNUM determines that due to the same sickness or injury, your are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience.

(Policy at LTD-BEN-1.) The Policy also provides that the claimant is required to furnish proof of disability when requested by UNUM:

We may request that you send proof of continuing disability indicating that you are under the regular care of a doctor. This proof, provided at your expense, must be received within 30 days of a request by us.

(Id. at LTD-CLM-1.)

On March 30, 1998, Fleming submitted an application for short term disability benefits to UNUM. Fleming stated that she was disabled as a result of carpal tunnel syndrome. Fleming's medical records indicated that she had suffered from carpal tunnel syndrome since 1993. Dr. Edward D. Lanigan, M.D., had performed surgery on Fleming's right arm on March 25, 1998. On or about June 1, 1998, UNUM approved Fleming's application for short term benefits and advised Fleming that it would transition her claim to the Policy for consideration of long term benefits. By letter dated July 21, 1998, UNUM notified Fleming that it had granted her request for long term disability benefits. UNUM also informed Fleming that:

2

> in order to qualify for ongoing benefits, you must continue to meet the definition of disability in your contract. UNUM may request that you provide us with additional medical and/or vocational information on a periodic basis to support your claim for disability benefits.

(Administrative R. ("A.R.") at FULCL00091-90.) During that same month, Dr. Lanigan performed surgery to relieve pain in Fleming's left arm.

By October 1998, Fleming returned to work on a limited basis and with restrictions on use of her hands and wrists. Fleming still suffered pain and numbness in her wrists, as well as pain in her shoulder, and by January 19, 1999, Fleming was taken off work due to pain in her arms and shoulder. In late May 1999, Dr. Lanigan advised UNUM that he expected Fleming to return to work by approximately June 19, 1999, limited to one-handed work. (A.R. at FULCL00358.)

In September 1999, Fleming reported to UNUM that she had started a new therapy treatment which did not seem to be improving her condition. (A.R. at FULCL000866.) On March 30, 2000, Fleming reported to Andrea Dube, the UNUM disability benefits specialist in charge of Fleming's claim, that she was going to physical therapy two times per week and was engaging in a home exercise program. (A.R. at FULCL00387.) Fleming also reported that she continued to suffer swelling in her wrists and pain in her arms and shoulder. Fleming said that she was not taking any medications for her condition.

On April 4, 2000, UNUM wrote to Fleming to inform her about the change in definition of disability under the Policy after 24 months of payments. (A.R. at FULCL00398.) UNUM explained that it would be reviewing Fleming's current medical and vocational information to determine whether Fleming qualified for benefits under the "any gainful occupation" definition commencing on June 3, 2000. On May 26, 2000, Terry Jackson of UNUM reviewed Fleming's file and determined that based upon Fleming's current restrictions and limitations, there were no transferable occupations for Fleming. (A.R. at FULCL00521.)

In April 2001, UNUM received additional information from Dr. Lanigan and Dr. Kathleen A. Buran, M.D., an orthopedic surgeon who had performed arthroscopic surgery on Fleming's right shoulder in January of 2001. Dr. Buran indicated that the prognosis for recovery of the shoulder condition was "good" and that there were "no limitations" as a result of the shoulder problem. (A.R. at FULCL00652.) Dr. Lanigan submitted an "Estimated Functional Abilities Form" in which he indicated that Fleming could perform sedentary activity for 8 hours per day and light activity for 4 hours per day. (A.R. at FULCL00648.) Dr. Lanigan also indicated that Fleming could occasionally lift/carry up to twenty pounds, could occasionally crawl, reach above the shoulder, and push or pull five pounds, and could continuously bend, kneel, and climb stairs. (A.R. at FULCL00649.) Based upon this information, UNUM determined that disability could not be supported after April 23, 2001, without restrictions and limitations from Dr. Lanigan for Fleming's use of her wrists.

On July 11, 2001, UNUM wrote to Dr. Lanigan requesting updated information on his current diagnosis, restrictions and limitations, treatment plan, and potential for Fleming to return to work. UNUM sent a second request for this information to Dr. Lanigan on November 19, 2001, after he failed to respond to UNUM's July 11, 2001, request. On the same date, UNUM sent a letter to Fleming reminding her of the need for proof of continuing disability and notifying her that UNUM would conclude that she was no longer seeking benefits if she did not provide the requested information within thirty days. (A.R. at FULCL00703-02.) Neither Dr. Lanigan nor Fleming responded to UNUM's requests.

On January 25, 2002, Douglas Palmer, a Senior Vocational Consultant for UNUM, reviewed the most recent information from Dr. Lanigan and determined that Fleming could perform three sedentary and one light work occupations. (A.R. at FULCL000710.) On February 5, 2002, UNUM sent a letter to Fleming confirming that it had not received any additional information from Fleming

4

and notifying her that it had reviewed her file and determined that she no longer met the definition of disability under the Policy. (A.R. at FULCL00718-15.) UNUM stated that the restrictions that Dr. Lanigan identified in his prior report to UNUM and Fleming's transferrable skills allowed her to engage in three sedentary occupations and one light occupation. UNUM therefore denied Fleming's claim for further disability benefits beyond January 31, 2002, although it advised Fleming of her right to appeal the denial.

Fleming appealed UNUM's decision on March 7, 2002, and submitted additional records in support of her appeal. In support of her appeal, Fleming submitted a letter and copies of medical records from Carol A. Beals, M.D., and a letter from Scott Benjamin, a physical therapist. Dr. Beals provided a new diagnosis of fibromyalgia but did not specify any restrictions or limitations in connection with that diagnosis, although she did suggest that a functional capacity evaluation/work analysis would be the most beneficial means of determining Fleming's work abilities. (A.R. at FULCL000736.) Dr. Maureen Lee, D.O., reviewed the new information from Dr. Beals and determined that although Fleming's symptoms supported a diagnosis of fibromyalgia, there were no new restrictions or limitations that would change UNUM's prior determination. (A.R. at FULCL00762.) Based upon Dr. Lee's review, UNUM denied Fleming's appeal by letter dated April 10, 2002. (A.R. at FULCL00770.) However, UNUM informed Fleming that it would forward Fleming's claim to its Quality Performance Support Unit for completion of the appellate review.

On April 23, 2002, UNUM's Quality Performance Support Unit notified Fleming of its decision to affirm the denial of Fleming's claim but offered Fleming the opportunity to submit new information regarding her claim, including a work capacity analysis as recommended by Dr. Beals, within thirty days. (A.R. at FULCL00781-79.) On or about May 21, 2002, Fleming submitted additional information to UNUM, including Dr. Lanigan's notes of a May 13, 2002, office visit with

Fleming and a letter from Dr. Beals reiterating her diagnosis of fibromyalgia and her opinion that Fleming should have a work capacity evaluation. By letter dated May 28, 2002, the Quality Performance Support Unit notified Fleming that it considered the new information insufficient to reverse its prior decision because it did not provide a medically sufficient basis for imposing additional limitations or restrictions that would render Fleming disabled. (A.R. FULCL00783.) UNUM stated:

> Although Dr. Lanigan advocates for your continued receipt of disability benefits, he does not provide any medical evidence to support a loss in functional capacity. In fact, the material he submits indicates that his last visit with you was March 26, 2001 when he filled out the functional capacities form that indicated you had sedentary capacity. His letter does not include any clinical observations, or diagnostic tests. He appears to [sic] recording the symptoms you report to him, rather than recording observed physical limitations.

(Id.) UNUM further advised Fleming that she had fully exhausted her administrative remedies.

## Discussion

### I. Standard of Review

In order to properly review Fleming's claim for benefits, the Court must first determine the appropriate standard of review. A plan administrator's denial of benefits under an ERISA plan is reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57 (1989); see also Perez v. Aetna Life Ins. Co., 150 F.3d 550, 555 (6th Cir. 1998). The *de novo* standard of review applies to both the factual determinations and legal conclusions of the plan administrator. See Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 613 (6th Cir. 1998).

Where the plan clearly confers discretion upon the administrator to determine eligibility or construe the plan's provisions, the determination is reviewed under the "arbitrary and capricious"

6

standard. Wells v. United States Steel & Carnegie Pension Fund, Inc., 950 F.2d 1244, 1248 (6th Cir. 1991). The arbitrary and capricious standard "'is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.'" Davis v. Kentucky Fin. Cos. Retirement Plan, 887 F.2d 689, 693 (6th Cir. 1989) (citation omitted) (quoting Pokratz v. Jones Dairy Farm, 771 F.2d 206, 209 (7th Cir. 1985)); see also Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 984 (6th Cir. 1991) (noting that administrators' decisions "are not arbitrary and capricious if they are 'rational in light of the plan's provisions'") (quoting Daniel v. Eaton Corp., 839 F.2d 263, 267 (6th Cir. 1988)). In applying this standard, the Court must defer to the administrator's interpretation when the plan vests the administrator with discretion to interpret the plan; an administrator's determination will be overturned only upon a showing of internal inconsistency in the plan or bad faith. Davis, 887 F.2d at 695. While no particular language is necessary to vest the plan administrator with discretion to interpret the plan or make benefit determinations, the Sixth Circuit "has consistently required that a plan contain 'a *clear* grant of discretion [to the administrator] to determine benefits or interpret the plan.'" Perez, 150 F.3d at 555 (quoting Wulf v. Quantum Chem. Corp., 26 F.3d 1368, 1373 (6th Cir. 1993) (italics and alteration in original)).

Fleming argues that the Court's review is *de novo* because the Policy lacks a provision granting UNUM the discretion to either interpret the Policy or to determine a claimant's eligibility for benefits. Fleming's argument ignores the following provision in the Policy:

> The policy is delivered in and is governed by the laws of the governing jurisdiction and to the extent applicable by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments. When making a benefit determination under the policy, *UNUM has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy*.

7

(Policy at CC.FP-1(italics added).) This provision is sufficient under <u>Firestone Tire & Rubber</u> to invoke the arbitrary and capricious standard of review. Moreover, even if UNUM has a conflict of interest, an administrator's conflict of interest does not alter the standard of review, but is merely a factor that should be taken into account in determining whether the decision was arbitrary and capricious. <u>See</u> <u>Peruzzi v. Summa Med. Plan</u>, 137 F.3d 431, 433 (6th Cir. 1998). Accordingly, the Court will apply the deferential standard of review to UNUM's denial of benefits.

## II.    Denial of Benefits

As noted above, the Policy provides that a claimant such as Fleming is required to provide, upon UNUM's request, proof of continuing disability at the claimant's expense. (Policy at LTD-CLM-1.) Under the Policy, following the initial 24 months of payments, Fleming was entitled to benefits only if she was able to demonstrate that she was "unable to perform the duties of any gainful occupation for which [she was] reasonably fitted by education, training or experience." (Policy at LTD-BEN-1.) Thus, Fleming bore the burden of proving that she was entitled to disability benefits because she could not perform any occupation, including occupations that are sedentary in nature. <u>See</u> <u>Miller v. Metro. Life Ins. Co.</u>, 925 F.2d 979, 985 (6th Cir. 1991).

Fleming argues that UNUM's decision to deny benefits in January 2002 was contrary to the medical evidence in the administrative record and UNUM's own prior determinations that Fleming was disabled under both the Policy's "regular occupation" and "any gainful occupation" definitions of disability. Fleming further argues that UNUM's determination that Fleming could perform several occupations ignored the permanent restrictions and limitations that Dr. Lanigan provided in 1999, namely that Fleming was incapable of performing sedentary work and could not engage in activities involving pushing, pulling, gripping, or fine manipulation. Finally, Fleming claims that

8

UNUM's decision must be reversed because her medical records demonstrate that she sought continuous medical care for her upper extremity and cervical spine complaints.

Fleming's arguments all fail because they ignore two crucial points. First, as set forth in the Policy, in order to continue receiving disability benefits, Fleming was obligated to provide proof of continuing disability. Second, although Dr. Lanigan initially opined that Fleming had a "severe limitation of functional capacity" and was incapable of sedentary activity, by late March of 2001, Dr. Lanigan reported to UNUM that Fleming could work eight hours of sedentary activity and four hours of light activity; bend, kneel, and climb stairs continuously; crawl, reach above her shoulder, and push or pull five pounds occasionally; and use both hands for simple grasping, fine manipulation, and medium dexterity. Based upon Dr. Lanigan's initial opinions, UNUM correctly determined that Fleming was unable to perform her regular occupation as a personal banker during the first 24 months of payments and that Fleming was unable to perform any occupation from the end of the initial 24-month period through April 23, 2001. However, based upon the information that Dr. Lanigan and Dr. Buran provided to UNUM in late March or early April 2001, UNUM reasonably concluded that Fleming's condition had changed such that she was no longer unable to perform sedentary or light work. Contrary to Fleming's assertions, there is no medical evidence in the record showing that the initial restrictions and limitations were "permanent," as Fleming suggests. The evidence that Fleming cites consists of Fleming's own interpretation, not the opinion of a medical provider. Moreover, Dr. Lanigan's March 2001 report to UNUM soundly refutes Fleming's assertion that she had permanent restrictions and limitations that prevented her from performing any occupation.

The Court also notes that Fleming has failed to identify any evidence in the record showing that UNUM's decision was arbitrary and capricious. UNUM based its decision upon Dr. Lanigan's

9

March 2001 report as well as a vocational consultant's determination that Fleming had transferable skills that would allow her to perform several occupations consistent with the restrictions and limitations imposed by Dr. Lanigan.  Before making its determination, UNUM twice requested additional information from Dr. Lanigan and also requested additional proof of disability from Fleming.  Neither responded to UNUM's requests.  Moreover, UNUM considered the additional information that Fleming submitted in connection with her appeal.  As noted above, however, none of the information from Dr. Beals or Dr. Lanigan identified any new restrictions or limitations or suggested that UNUM's reliance upon Dr. Lanigan's prior opinion was erroneous or unreasonable.

Finally, the evidence in the record fails to show that bias or a conflict of interest played any part in UNUM's denial of benefits or that UNUM, as Fleming suggests, "was going to do whatever was needed to terminate [Fleming's] benefits."  (Pl.'s Br. at 12.)  Other than unsubstantiated allegations, Fleming has failed to cite any evidence showing that UNUM acted improperly in concluding that Fleming was not entitled to benefits.  See Kalish v. Liberty Mut./Liberty Life Assurance Co. of Boston, 419 F.3d 501, (6th Cir. 2005) (finding that the plaintiff's conclusory allegations were insufficient to show bias by the reviewing physician retained by the disability insurer).  Fleming does argue that Dr. Lee, the physician who reviewed the medical information that Fleming submitted in support of her appeal, was biased because she did not physically examine Fleming.  However, there is "nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination." Calvert v. Firstar Fin., Inc., 409 F.3d 286, 296 (6th Cir. 2005).  Moreover, UNUM was not obligated to examine Fleming.  See Bucks v. Reliance Standard Life Ins. Co., No. 99-3398, 2000 WL 659029, at *5 (6th Cir. May 12, 2000) (finding that

10

the plan administrator was not obligated to examine the claimant). Finally, Fleming has failed to explain why Dr. Lee's conclusion is not worthy of credence.[1]

## Conclusion

For the foregoing reasons, the Court will grant UNUM's motion for judgment based upon the administrative record and deny Fleming's motion for judgment based upon the administrative record.

An Order and Judgment consistent with this Opinion will be entered.


Dated: November 1, 2005                    /s/ Gordon J. Quist
                                        GORDON J. QUIST
                                     UNITED STATES DISTRICT JUDGE

---

[1] Having concluded that UNUM's denial of benefits was not arbitrary and capricious, the Court finds it unnecessary to address UNUM's alternate argument that Fleming's claim is time-barred.

11